J & E Investments LLC,
Petitioner-Appellant,†

v.

Division of Hearings and Appeals,
Respondent-Respondent.

Court of Appeals

*No. 2012AP2081. Submitted on briefs May 7, 2013.
—Decided June 25, 2013.*

2013 WI App 90

(Also reported in 835 N.W.2d 271.)

† Petition for Review denied 11-26-13.

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Alan Marcuvitz* and *Andrea H. Roschke* of *Michael, Best & Friedrich, LLP*, of Milwaukee.

On behalf of the respondent-respondent, the cause was submitted on the brief of *J.B. Van Hollen*, attorney general, and *Sara K. Beachy*, assistant attorney general.

Before Curley, P.J., Fine and Kessler, JJ.

¶ 1. CURLEY, P.J. J&E Investments LLC appeals the order affirming a decision of the Division of Hearings and Appeals ("the Division"), which concluded that the Department of Transportation ("DOT") had statutory authority to revoke J&E's driveway permit providing access to one of its parking lots, and found that J&E had reasonable, alternative access to the parking lot. We affirm.

## BACKGROUND

¶ 2. J&E owns property at 2130 Mayfair Road, on which sits a two-story, multi-tenant commercial building and two parking lots. The building is situated at the corner of Mayfair Road[1] and Garfield Avenue, just north of the exit ramp where traffic from Highway 45 flows onto Mayfair Road. Garfield Avenue abuts the property to the north, Mayfair Road abuts the property to the west, and a frontage road/alley known as West Fisher Parkway abuts the property to the east. One parking lot, having approximately thirty parking spaces, is immediately south of the building and runs the length of the block between Mayfair Road and West Fisher Parkway. The other parking lot, much smaller in size, accommodates about four to six vehicles parking parallel along the north and east sides of the building. To the

---

[1] Mayfair Road is also known as State Highway 100 in this location.

south of the building and the large parking lot is another commercial building, 2100 Mayfair Road.[2]

¶ 3. Four driveways provide access to the property; two provide access to the large parking lot on the property, and two provide access to the smaller lot. The first driveway, the driveway that we are concerned with here, is located on Mayfair Road. It is located just south of the building and provides access to the large parking lot. This driveway is nearest the building's front entrance. The second driveway also provides access to the large parking lot, but is accessed from the opposite end of the lot near the back of the building via West Fisher Parkway. The third and fourth driveways are both located on Garfield Avenue; both provide access to the small parking lot that borders the building on the north and east.

¶ 4. The case before us concerns the driveway on Mayfair Road, *i.e.,* the driveway nearest the Highway 45 exit ramp. The DOT issued a permit allowing the property's then-owner to install the driveway, thereby granting access to the property via Mayfair Road, in 1966. That permit transferred ownership with the property, and has been held most recently by J&E, who purchased the property in 2006.

¶ 5. In June 2009, the DOT informed J&E that it planned to revoke its driveway access permit. The reason, according to the Department, was safety; the DOT hoped to reduce the potential for crashes as vehicles entered and left the highway.

---

[2] The proceedings regarding J&E's property at 2130 Mayfair Road were combined with another case involving the property located immediately to the south of the J&E property at 2100 Mayfair Road. The owner of the property at 2100 Mayfair Road does not appeal the Division's final decision.

¶ 6. Over J&E's objections, the DOT revoked the permit on August 20, 2009, and J&E appealed the decision to the Division. J&E argued that the DOT lacked statutory authority to revoke its permit. It also argued that the DOT improperly exercised its police power and that it should have instead invoked its eminent domain powers. The case went before an Administrative Law Judge ("ALJ"), who held a hearing on the matter.

¶ 7. The ALJ issued a proposed decision, which the Division adopted on September 16, 2011, concluding that the DOT's revocation of the permit was authorized. The decision included twenty-six findings of fact and several conclusions of law, including that: (1) the DOT had statutory authority to revoke its permit; and (2) J&E had reasonable, alternative access to its property. The decision noted that while J&E's existing driveway access did not meet the DOT's current engineering guidelines, revocation was only appropriate in this case because there was reasonable, alternative access to the property. Regarding the alternatives to J&E's Mayfair Road driveway, as well as the neighboring driveway, the ALJ explained:

> [T]he accesses from the public alley are not equivalent to the existing accesses from Mayfair Road; however, the location of these alternative accesses is not atypical for properties that have frontage on high traffic volume roadways such as Mayfair Road. The location of the accesses off the public alley will not be unexpected . . . through some minor signage. Ingress and egress from the properties will involve added time and distance. The added travel time and distance, [however,] will not be significant. The one situation that will result in significant increase in traffic time and distance is for motorists approaching the properties southbound on Mayfair Road. However, the added

time and distance for those motorists is mainly a function of the closing of the Mayfair Road median at the intersection with Garfield Avenue. These motorists will incur additional travel time and distance regardless of what happens to the subject driveways.

The closest call in balancing [J&E's] right to access with public safety is the limitations of the public alley for use as an access for commercial properties. These limitations include the narrowness of the alley, conflicts with the use of the alley by private residences, and concerns about snow removal. [J&E's] expert conceded that he would consider the accesses from the public alley reasonable, alternative accesses to the existing Mayfair Road driveway if they were from a city street as opposed to any alley. Although the public alley [West Fisher Parkway] is narrower and is not constructed to the standards of a city street, it will accommodate the additional traffic that is projected as a result of the removal of the Mayfair Road accesses. The accesses from the alley to constitute reasonable, alternative access to the existing accesses off of [State Highway] 100.

¶ 8. After the Division adopted the ALJ's proposed decision and findings, J&E appealed to the trial court. The trial court affirmed the Division's decision, and J&E now appeals.

## ANALYSIS

¶ 9. On appeal, J&E challenges the Division's conclusion that the DOT had statutory authority to revoke its driveway permit. J&E also challenges the Division's finding that J&E has reasonable alternative access to its property via the public alley at the rear of the building. J&E further argues that the DOT "should be estopped from revoking the permit" because it interferes with J&E's "vested rights." We discuss each argument in turn.

*A. The DOT had statutory authority to revoke J&E's permit.*

██

¶ 10. J&E first challenges the Division's legal conclusion that the DOT had statutory authority to revoke its driveway permit. It also challenges the trial court's decision, which affirmed the Division's decision. "We review the Division's legal conclusions, not those of the trial court." *See Emmpak Foods, Inc. v. LIRC*, 2007 WI App 164, ¶ 3, 303 Wis. 2d 771, 737 N.W.2d 60.

¶ 11. The parties in this case do not agree on the proper standard of review. In its brief in chief, J&E argues that we ought to review the Division's legal conclusions *de novo* because they involve statutory interpretation. The Division, on the other hand, argues that "great weight" deference is appropriate. In its reply, J&E concedes that *de novo* review is not the proper standard, but that "due weight," which the trial court applied, is.

██

¶ 12. "We generally apply three levels of deference to conclusions of law and statutory interpretation in agency decisions." *Kitten v. DWD*, 2001 WI App 218, ¶ 22, 247 Wis. 2d 661, 634 N.W.2d 583. "These three levels take into account the comparative institutional qualifications and capabilities of the court and the administrative agency." *MercyCare Ins. Co. v. Wisconsin Comm'r of Ins.*, 2010 WI 87, ¶ 28, 328 Wis. 2d 110, 786 N.W.2d 785. The first level of deference, "great weight" deference, applies when: (1) the legislature charged the agency with the duty of administering the statute; (2) the agency's statutory interpretation is one of longstanding; (3) "the agency employed its specialized knowledge or expertise in forming the interpretation"; and

(4) "the agency's interpretation will provide consistency and uniformity in the application of the statute." *Tannler v. DHSS*, 211 Wis. 2d 179, 184, 564 N.W.2d 735 (1997). The second level of deference, "due weight," applies when "the agency has some experience in an area but has not developed the expertise that places it in a better position than the court to make judgments regarding the interpretation of the statute." *MercyCare*, 328 Wis. 2d 110, ¶ 30. When due weight deference applies, we sustain an agency's interpretation "if it is not contrary to the clear meaning of the statute" or unless we determine "that a more reasonable interpretation exists." *See id.* The third and lowest level of deference, *de novo* review, applies "where it is clear from the lack of agency precedent that the case is one of first impression for the agency and the agency lacks special expertise or experience in determining the question presented." *Kitten*, 247 Wis. 2d 661, ¶ 22.

¶ 13. We conclude that due weight review applies. "Although statutory interpretation is ordinarily a question of law determined independently by a court, a court may accord an agency's interpretation of a statute great weight deference or due weight deference." *Racine Harley-Davidson, Inc. v. DHA*, 2006 WI 86, ¶ 11, 292 Wis. 2d 549, 717 N.W.2d 184. In the case before us, the Division is charged with reviewing permit revocations, *see* Wis. Stat. § 86.073 (2011–12),[3] and consequently has the duty to enforce the statute. The Division acknowledged to the trial court, however, that hearings regarding driveway permit revocations are rare. Moreover, the Division notes in its brief that it has presided

---

[3] All references to the Wisconsin Statutes are to the 2011–12 version unless otherwise noted.

over less than a dozen driveway-related appeals in the past decade, and does not list any decisions where the DOT's statutory authority to revoke a permit was challenged. *Cf. Racine Harley-Davidson, Inc.*, 292 Wis. 2d 549, ¶¶ 56–57 (due weight deference more appropriate than great weight deference because Division had little experience with specific statutory definition at issue). We consequently agree with the trial court that while the Division "has some experience with respect to driveway permit revocation proceedings, it has not developed the expertise which necessarily places it in a better position to make legal conclusions," and conclude that the Division's legal conclusions are entitled to due weight deference. We will therefore sustain the Division's interpretation "if it is not contrary to the clear meaning of the statute" or unless we determine "that a more reasonable interpretation exists." *See MercyCare*, 328 Wis. 2d 110, ¶ 30.

¶ 14. With the proper standard of review in mind, we turn to J&E's contention that the DOT did not have statutory authority to revoke its driveway permit. In its decision, the Division concluded that the DOT's decision to revoke J&E's driveway access permit was "reasonable and consistent with the standards of Wis. Stat. § 86.07," and that, "pursuant to Wis. Stat. §§ 86.073(3) and 227.43(1)(bg)," the Division had the authority to affirm the DOT's order. J&E argues that this conclusion was incorrect, because the applicable statutes do not expressly provide the authority to revoke permits. According to J&E, the revocation of its permit interfered with its right to access the property.[4]

---

[4] J&E spends considerable time in its brief in chief explaining a property-owner's right of access to its property. As the Division points out, however, there is no dispute that J&E can still enter and leave its property at 2130 Mayfair Road without being forced to trespass; the issue is whether the remaining

¶ 15. Wisconsin Stat. § 86.07(2) requires that a property owner obtain "a permit to put in a driveway for access from private property abutting the highway." *Bear v. Kenosha Cnty.*, 22 Wis. 2d 92, 96, 125 N.W.2d 375 (1963). Moreover, a highway permit may be conditioned on rules as necessary for the "preservation of highways" and "the safety of the public." § 86.07(2); *see also Narloch v. DOT*, 115 Wis. 2d 419, 432, 340 N.W.2d 542 (1983). Section 86.07(2) provides, as relevant:

> No person shall make any excavation or fill or install any culvert or make any other alteration in any highway or in any manner disturb any highway or bridge *without a permit therefor from the highway authority maintaining the highway.* Such permit shall contain the statement and be subject to the condition that the work shall be constructed subject to such rules and regulations as may be prescribed by said authority and be performed and completed to its satisfaction, and in the case of temporary alterations that the highway or bridge shall be restored to its former condition, and that the permittee shall be liable to the town or county or state, as the case may be, for all damages which occur during the progress of said work or as a result thereof. *Nothing herein shall abridge the right of the department or the county board or its highway committee to make such additional rules, regulations and conditions not inconsistent herewith as may be deemed necessary and proper for the preservation of highways, or for the safety of the public, and to make the granting of any such permit conditional thereon.* If any culvert is installed or any excavation or fill or any other alteration is made in violation of the provisions of this subsection, the highway may be restored to its former condition by the highway authority in charge of the maintenance thereof; and any person who violates this subsection

access was reasonable. Therefore, any arguments relating to whether the remaining access was reasonable will be addressed in Section B of this opinion.

shall be punished by a fine of not less than $5 nor more than $100, or by imprisonment not exceeding 6 months, or both.

(Emphasis added.)

¶ 16. WISCONSIN STAT. § 86.073 provides for review of a DOT denial of an application for such a permit or the revocation of a granted permit. Specifically, § 86.073 states that, where the DOT's district office denies a permit application or revokes an issued permit, a permit applicant or holder may request that the DOT, and subsequently the Division, review that denial or revocation. *See id.*

¶ 17. WISCONSIN STAT. § 227.43(1)(bg) gives the Division the authority to preside over hearings conducted pursuant to WIS. STAT. § 86.073(3). *See* § 227.43(1)(bg).

¶ 18. We agree with the Division's, and the trial court's, interpretation of these statutes. Contrary to what J&E argues, WIS. STAT. § 86.073 does plainly allow the DOT to revoke a permit issued under WIS. STAT. § 86.07(2). *See* § 86.073(1)-(3). Under the statute, if the DOT confirms a district office's decision to revoke a permit, the DOT must "notify the applicant of a right to hearing before the division of hearings and appeals." § 86.073(3). This language, while not explicit, very clearly implies a right to revoke driveway permits. Indeed, if the DOT could *not* revoke a driveway permit, there would be no need to notify the permit holder of administrative review of the decision, and the language of the statute would be superfluous. Thus, the only reasonable reading of the relevant statutes is that they allow the DOT to revoke a driveway permit. *See MercyCare*, 328 Wis. 2d 110, ¶ 30; *State ex rel. Kalal v. Circuit Court for Dane Cnty.*, 2004 WI 58, ¶ 46, 271 Wis. 2d 633, 681 N.W.2d 110 (we read statutes to avoid absurd results). Therefore, we conclude that the DOT

did have statutory authority to revoke J&E's driveway permit, and the Division did have statutory authority to uphold the DOT's revocation.

¶ 19. Moreover, J&E's contention that even if WIS. STAT. § 86.073 may be construed to allow the Department to revoke permits, the statute only allows for the revocation of permits issued after 1983, when § 86.073 was enacted, is unreasonable. *See MercyCare*, 328 Wis. 2d 110, ¶ 30. Section 86.073 places no such restriction on revocation; rather, it allows for the revocation of any permit granted under WIS. STAT. § 86.07(2). Had the legislature wished to make the revocation provision applicable only to permits issued after a certain date, it would have done so. As § 86.07 was in effect in 1966, *see Bear*, 22 Wis. 2d at 96 (1963 case discussing issuance of permit under § 86.07), and J&E does not contest that its permit was in fact issued in accordance with § 86.07(2), it logically follows that the DOT had the authority to revoke the permit under WIS. STAT. § 86.073. We also note that J&E acquired the property in 2006, more than two decades after WIS. STAT. § 86.073 was enacted. J&E consequently took ownership of the property subject to the current statutes and was bound by them. *See AKG Real Estate, LLC v. Kosterman*, 2006 WI 106, ¶ 45, 296 Wis. 2d 1, 717 N.W.2d 835 ("A buyer of real property is expected to determine the rights to the land he is about to purchase.").

¶ 20. For these reasons, we also reject J&E's contentions that because there was no statutory authority for the DOT to revoke its permit, it was deprived of its right to a jury trial. As we explained above, the revocation of J&E's permit is governed by WIS. STAT. §§ 86.07 and 86.073, and is therefore subject to administrative review. *See* WIS. STAT. § 227.43(1)(bg). J&E did not have

a right to a jury trial. *See* Wis. Stat. § 227.57(1) (review of an administrative decision does not entitle a party to a jury trial).

██

¶ 21. In sum, because the DOT has the statutory authority to issue and revoke driveway access permits, we affirm the Division's conclusion that the DOT acted within its authority when it revoked J&E's permit.

### B. *J&E has reasonable, alternative access to its property at 2130 Mayfair Road.*

¶ 22. J&E also challenges the Division's finding that that J&E "has reasonable, alternative access to its property at 2130 Mayfair Road via the existing driveway access from the public alley [West Fisher Parkway] at the rear of the building." As the trial court properly noted, despite the fact that this finding was labeled a "conclusion of law," it is actually a finding of fact, *see Citizens' Util. Bd. v. Public Serv. Comm'n of Wisconsin*, 211 Wis. 2d 537, 550, 565 N.W.2d 554 (Ct. App. 1997) ("We are not bound by an agency's characterization of whether it is finding a fact or making a conclusion of law."); *Nat ional Auto Truckstops, Inc. v. DOT*, 2003 WI 95, ¶ 21, 263 Wis. 2d 649, 665 N.W.2d 198 (generally, whether reasonable, alternative access remains after permit revocation is a finding of fact), that we will affirm so long as it is supported by credible, substantial evidence in the record, *see Town of Barton v. DHA*, 2002 WI App 169, ¶ 7, 256 Wis. 2d 628, 649 N.W.2d 293.

¶ 23. The Division determined that the public alley constituted reasonable, alternative access based on numerous factors, which the ALJ discussed in its opinion:

> [T]he accesses from the public alley are not equivalent to the existing accesses from Mayfair Road; how-

ever, the location of these alternative accesses is not atypical for properties that have frontage on high traffic volume roadways such as Mayfair Road. The location of the accesses off the public alley will not be unexpected ... through some minor signage. Ingress and egress from the properties will involve added time and distance. The added travel time and distance, [however,] will not be significant. The one situation that will result in significant increase in traffic time and distance is for motorists approaching the properties southbound on Mayfair Road. However, the added time and distance for those motorists is mainly a function of the closing of the Mayfair Road median at the intersection with Garfield Avenue. These motorists will incur additional travel time and distance regardless of what happens to the subject driveways.

The closest call in balancing [J&E's] right to access with public safety is the limitations of the public alley for use as an access for commercial properties. These limitations include the narrowness of the alley, conflicts with the use of the alley by private residences, and concerns about snow removal. [J&E's] expert conceded that he would consider the accesses from the public alley reasonable, alternative accesses to the existing Mayfair Road driveway if they were from a city street as opposed to any alley. Although the public alley [West Fisher Parkway] is narrower and is not constructed to the standards of a city street, it will accommodate the additional traffic that is projected as a result of the removal of the Mayfair Road accesses. The accesses from the alley to constitute reasonable, alternative access to the existing accesses off of [State Highway] 100.

¶ 24. J&E does not challenge any part of this discussion, nor does it challenge any of the twenty-six findings of fact on which the ALJ, and later the Division, based its decision. Rather, J&E submits the following conclusory argument:

Wauwatosa Code Section 24.46.030 prohibits an alley serving both residential and commercial properties. This section reads as follows:

Land or premises included in any zoning district shall not be used to provide ingress or egress from any land or premises including in any zoning district of a lower classification, provided, however, that this provision does not apply between land or premises in the business districts and land or premises in the manufacturing and industrial districts.

Thus, there is a legal prohibition against using a residential alley as a main access to business properties. The remaining access is unreasonable as a matter of law.

(Footnote omitted.)

¶ 25. J&E's argument is insufficiently developed. The mere citation to this particular ordinance, with its hazy language, does not, without further explication, clearly show that using a residential alley as a main access to business property is in fact prohibited. Consequently, we will not consider this argument. *See M.C.I., Inc. v. Elbin*, 146 Wis. 2d 239, 244–45, 430 N.W.2d 366 (Ct. App. 1988).

¶ 26. Therefore, because the Division's finding that there was reasonable, alternative access to the property is supported by credible and substantial evidence in the record, *see Town of Barton*, 256 Wis. 2d 628, ¶ 7, we affirm.

C. *J&E's estoppel argument is not properly before this court.*

¶ 27. J&E further argues that "the DOT should be estopped from revoking the permit so as to interfere with J&E's vested rights." (Some formatting altered.)

However, it does not refute the Division's contention that J&E did not raise this argument below. *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 492–93, 588 N.W.2d 285 (Ct. App. 1998) (we generally do not consider arguments raised for the first time on appeal). Rather, it asks us to conclude that an equitable estoppel argument was inferred by the fact that: (1) the ALJ made a passing reference to equity in its decision, and (2) the fact that J&E "emphasized" that the building at 2130 North Mayfair Road was built after the driveway permit was issued, thereby showing reliance on the 1966 permit. In our opinion, this is not enough to show that the issue was raised below. *See id.* Furthermore, J&E's estoppel argument is little more than a conclusory allegation that the Division erred in affirming the permit revocation because J&E will be disadvantaged by the limited access to its large parking lot; in other words, it is an insufficiently developed challenge to the Division's findings of fact, *see Elbin*, 146 Wis. 2d at 244–45, which, for the reasons explained above, we will not consider.

*By the Court.*—Order affirmed.